# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

**DARRELL LEE CLARK,**

    **Plaintiff,**

vs.                                                                                     **CIVIL ACTION NO. 2:15-14654**

**CAROLYN W. COLVIN**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 5, 2016 (Document No. 7.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.)

The Plaintiff, Darrell Lee Clark (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on April 27, 2012, alleging disability beginning January 31, 2011 as a result of chronic obstructive pulmonary disease ("COPD") and hearing impairment.[1] (Tr. at 171.) His claim was denied on August 1, 2012 (Tr. at 73-77.) and again upon reconsideration

---

[1] In his Disability Report – Appeal, dated September 7, 2012, Claimant alleged his COPD, blood pressure and blood oxygen level have worsened. (Tr. at 190.) In another Disability Report – Appeal, dated April 12, 2013, Claimant alleged that since the last Disability Report, his COPD was getting worse and that his hearing was getting worse. (Tr. at 205.)

on March 21, 2013. (Tr. at 81-87.) Thereafter, Claimant filed a written request for hearing on April 11, 2013. (Tr. at 88-89.) An administrative hearing was held on May 12, 2014 before Administrative Law Judge ("ALJ") Peter Jung. (Tr. at 25-50.) The ALJ heard the testimonies of Claimant (Tr. at 31-41.) and Vocational Expert ("VE") Cecilia Thomas. (Tr. at 42-49.) On June 13, 2014, the ALJ entered a decision finding Claimant was not disabled. (Tr. at 9-24.)

The ALJ's decision became the final decision of the Commissioner on September 10, 2015 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-8.) On November 4, 2015, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . .." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not,

the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant last met the requirements for insured worker status through December 31, 2016. (Tr. at 14, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: chronic obstructive pulmonary disease; degenerative disc disease of the lumbar spine; bilateral hearing loss; vision disorder; and osteoarthrosis of the knees. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4.) Next, the ALJ found that Claimant had a residual functional capacity ("RFC") to perform light work as defined in the Regulations:

> as being able to lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour work day. This individual is further limited posturally in that he can never climb ladders, ropes, scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel

crouch, and crawl. This individual has visual limitations in that he is limited in his right eye with both near and far acuity. This person must wear bilateral hearing aids and his hearing should be considered at the Dictionary of Occupational Titles level 3 or a moderate level. Environmentally, this individual must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, hazards, machinery, and heights. (Tr. at 16, Finding No. 5.)

At step four, the ALJ found that Claimant was incapable of performing past relevant work. (Tr. at 18, Finding No. 6.) At step five of the analysis, the ALJ found that having been born on September 16, 1962 and 48 years old, Claimant was a younger individual as of the alleged disability onset date, and subsequently changed age category to closely approaching advanced age. (Tr. at 19, Finding No. 7.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Id., Finding No. 8.) Employing the Medical-Vocational Rules as a framework, the ALJ determined that Claimant was not disabled, that transferability of job skills was immaterial to the determination of disability, as Claimant's age, education, work experience, and residual functional capacity indicated that there were other jobs existing in significant numbers in the national economy that Claimant could perform. (Id., Finding Nos. 9 and 10.) On that basis, the ALJ found Claimant was not disabled. (Tr. at 20, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Issue on Appeal

The issue presented is whether the ALJ failed to provide "good reasons" or persuasive contrary evidence when he rejected Claimant's treating physician's opinion, specifically with regard to the limitations with respect to his COPD, and whether this improper evaluation was error with regard to Claimant's RFC assessment.

Claimant's Background

At the time of the alleged onset date, Claimant was considered a "younger individual" but transitioned into the category of "closely approaching advanced age" when the ALJ issued his decision. (Tr. at 19.) See 20 C.F.R. § 404.1563(c) and (d). He completed the twelfth grade and did not attend special education. (Tr. at 172.) His past relevant work experience included construction laborer and sheet metal worker. (Id.) He had specialized training in welding. (Id.)

The Relevant Evidence of Record

Treatment for COPD:

On February 1, 2012, Claimant complained of a chest cold, aching, and that his "back is out"; he was treated for bronchitis and COPD. (Tr. at 241.) Later, on April 27, 2012, Claimant

presented to the emergency room for chest pain; he was observed to have wheezing, shortness of breath, and a productive cough. (Tr. at 224.) The clinical impression was COPD exacerbation; Claimant was treated with medications. (Tr. at 225.) A follow-up examination on May 7, 2012 indicated that Claimant had COPD and pneumonia and prescribed Levaquin and prednisone with an inhaler. (Tr. at 240.) On July 27, 2012, Claimant went to Marietta Memorial Hospital complaining of chest pain, congestion, with shortness of breath and a cough. (Tr. at 251-259.) It was noted that Claimant had COPD and that he smoked two packs of cigarettes per day. (Tr. at 252, 256.) It was further noted that "he may have bronchitis plus some chest congestion as a result of it (Tr. at 251.); he was discharged with instructions to follow up with his primary care physician. (Tr. at 253.)

    On January 28, 2013, Claimant again sought treatment for shortness of breath at night and was observed to have decreased respiratory sounds; it was noted that he complained of back pain "all the time". (Tr. at 239.) Again on May 5, 2013, he was noted to have expiratory wheezing with diminished and coarse breath sounds, but no respiratory distress. (Tr. at 281.) On May 15, 2013, at Marietta Memorial Hospital, he was observed to have scattered inspiratory and expiratory wheezing and was diagnosed with intrinsic asthma. (Tr. at 260-263.) Claimant's COPD was noted to be stable and non-progressive, mild in severity with no aggravating factors. (Tr. at 261, 295.) It was noted that Claimant was capable of bathing, cooking, driving, eating, shopping, working, getting dressed, getting in and out of bed/chair, and performing housework. (Id.) He was counseled on dieting, exercising and ceasing smoking cigarettes. (Tr. at 264, 298.) Claimant returned to Marietta Memorial Hospital on February 22, 2014 due to back pain, [discussed *infra*]; his chest wall had no tenderness, examination of Claimant's lungs revealed no wheezing, rales, rhonchi, or

cough and his "accessory muscle use" was negative with good bilateral air exchange. (Tr. at 328, 330.)

Treatment for Back Pain:

X-rays taken on April 16, 2013 of Claimant's lumbar spine indicated "no evidence for obvious compression fracture or subluxation" and "mild osteopenic changes [were] noted along with moderate to prominent chronic and degenerative changes." (Tr. at 345-347.)

On May 5, 2013, Claimant presented to QuickCare Walk-In Medical Center due to cold symptoms, body aches, and back pain. (Tr. at 282, 283.) He was given antibiotics and ibuprofen and advised to follow up with his family doctor. (Tr. at 284.) On May 15, 2013, Claimant was seen at Marietta Memorial Hospital complaining that his back "was always hurting" and that he had joint pain and stiffness; Claimant reported his symptoms were exacerbated by "inactivity" and improved by "exercise/activity." (Tr. at 294-295.) A review of his musculoskeletal system indicated that his range of motion was normal with pain in low back and hip during ROM testing. (Tr. at 296.) Stability, muscle strength/tone, in both his right lower extremity and left lower extremity, and his gait were observed to be normal. (Tr. at 296-297.) On May 30, 2013, Claimant returned to QuickCare because of his back pain, complaining that it radiated into his right hip; he also reported having joint pain when moving. (Tr. at 285.) Paravertebral tenderness was noted; Claimant was prescribed medication. (Tr. at 286.) Claimant returned on October 14, 2013 for back pain and to obtain refills on Zyrtec. (Tr. at 287.) On November 12, 2013 Claimant was seen again for refills on his prescriptions and for continued treatment for his back pain as well as allergies. (Tr. at 289-293.)

Claimant returned to Marietta Memorial Hospital on February 22, 2014 due to back pain and vomiting. (Tr. at 301-304, 309-318, 325-338.) X-rays of his lumbar spine taken on February 22, 2014 indicated "no acute compression fracture or traumatic subluxation" and "similar appearance of moderate to severe multilevel degenerative disc disease in lumbar spine". (Tr. at 311, 338.) Claimant's physical examination revealed moderate tenderness in L1 to L5 region with spasms, but full range of motion and negative straight leg raising testing. (Tr. at 328.) Claimant was prescribed medications and given an injection which improved his symptoms, and was discharged that same day. (Id.)

State Agency Medical Examiner:

On July 5, 2012, Claimant was evaluated by Stephen Nutter, M.D. (Tr. at 226-234.) Dr. Nutter observed Claimant to have a normal gait, stable at station, and comfortable in supine and sitting positions. (Tr. at 227.) He had a normal curvature of the lumbar spine and no evidence of paravertebral muscle spasm; no tenderness was noted and straight leg raising testing was normal. (Tr. at 229.) Dr. Nutter observed Claimant could stand on one leg at a time, walk and squat without difficulty. (Id.) Dr. Nutter further observed Claimant's ability to hear conversational voices was mild to moderately impaired. (Tr. at 227.) Dr. Nutter noted Claimant's breath sounds were coarse with bilateral wheezing, more noticeable on the right than the left. (Tr. at 228.) Claimant reported no hospitalizations for breathing difficulties. (Tr. at 226.) Claimant's visual acuity was found to be 20/50 in the right eye and 20/40 in the left eye, without corrective lenses. (Tr. at 227.) Dr. Nutter further noted that Claimant had crepitus in his knees while squatting, without tenderness (Tr. at 228.) and a decreased range of motion in the lumbar spine. (Tr. at 229.) Pulmonary function testing yielded normal results. (Tr. at 231-233.)

Dr. Nutter re-examined Claimant on March 12, 2013. (Tr. at 242-246.) The evaluation mirrored the previous one, with the exception of crepitus in the left knee was noted, but not the right, and Claimant had pain during range of motion testing of the lumbar spine. (Tr. at 244-245.) Claimant was noted to have expiratory wheezes and diminished air movement, but he had clear lungs and no shortness of breath. (Tr. at 244.)

State Agency Medical Consultant:

On July 30, 2012, Brian Martin, SDM, provided an RFC assessment and opined that Claimant retained the ability to perform medium work with occasional climbing of ladders, ramps, and stairs but would be limited in near and far acuity for his right eye and had severe to profound sensory hearing loss bilaterally. (Tr. at 55-57.) Mr. Martin further stated that Claimant must avoid concentrated exposure to environmental factors. (Tr. at 57.) On March 21, 2013, A. Rafael Gomez, M.D. affirmed Mr. Martin's opinion. (Tr. at 67-69.)

Kalapala Rao, M.D., Treating Physician:

The record contains a treatment note dated December 30, 2013 that indicated Claimant sought treatment from Dr. Rao for his worsening back pain; Claimant's lower extremity muscle strength, range of motion, and sensory in his lower extremities were normal. (Tr. at 342.) His gait, tiptoe walking, and heel walking were normal. (Id.) Dr. Rao continued to treat Claimant for his pain conservatively with ice and heat, home exercises, no heavy lifting, medication, and trigger point injections from January 2014 through April 2014. (Tr. at 339-340.) Treatment notes dated March 24, 2014 and April 21, 2014 indicated that Claimant reported no side effects; he had tenderness of the lumbar spine and decreased flexion and extension, however, his gait and straight leg rising testing were normal. (Tr. at 340.)

On February 3, 2014, Dr. Rao completed a Medical Assessment of Ability to Do Work-Related Activities – (Physical).[2] (Document No. 12-1.) As a result of his COPD and low back pain due to moderate degenerative disc disease of the lumbar spine, Dr. Rao stated Claimant could lift and carry 20 pounds occasionally and 5 – 10 pounds frequently. (Id. at 1.) Dr. Rao opined that Claimant "has poor endurance due to COPD" and because of his moderate disc disease, could stand/walk 15 – 30 minutes, but only 15 minutes without interruption in an eight-hour work day. (Id.) Dr. Rao also opined that Claimant could sit a total of four hours, with thirty minutes without interruption during an eight-hour work day. (Id. at 2.) Claimant could occasionally stoop, crouch, kneel and crawl, but never climb or balance. (Id.) Dr. Rao found Claimant's impairments included environmental restrictions because he must wear hearing aids, his "COPD with breathing difficulty" requires him to use oxygen, and he has tenderness of the lumbosacral spine. (Id. at 2-3.) Dr. Rao also found that Claimant had limitations with seeing and speaking, but was unlimited with hearing because he has hearing aids. (Id. at 4.)

The Administrative Hearing

    Claimant Testimony:

Claimant testified that he could hear about 60 percent of the time with his hearing aids as long as he was looking straight at the person and there was no other background noise. (Tr. at 34.) He explained that with background noise, he would become confused because he was not able to hear everything being said to him. (Id.) He stated his ability to hear had deteriorated over time, and currently he was unable to hear at all without his hearing aids. (Id.) Claimant admitted to having difficulty hearing his supervisors due to the noise of the machines and relied on coworkers

---

[2] Though this medical source statement was mentioned by the ALJ in his decision (Tr. at 18.), this exhibit was not included in the Commissioner's transcript of the record.

to tell him what to do on the job. (Tr. at 35.) He stated he had difficulty hearing others on the telephone and wore headphones to watch television and movies. (Tr. at 35-36.) Claimant testified that he also had vision problems in both eyes and must be looking straight at an object to read it. (Tr. at 36.) He stated he wore bifocals to read and would develop a headache if he read for a long period of time. (Id.)

Claimant explained that due to his breathing problems, he could walk around "a little bit" but avoided stairs and walking uphill. (Tr. at 37.) He indicated extreme climate temperatures made him feel like he was out of oxygen. (Id.) He also stated he had previously worked with asbestos prior to the law requiring full face, filtered respirators. (Tr. at 37-38.)

He also testified that he had constant pain in his lower back. (Tr. at 38.) He stated that he could stand for 30 to 40 minutes at a time but then would need to sit down. (Id.) He stated that he could sit comfortably for 10 to 15 minutes. (Id.) Claimant stated he could not bend down to pick things up from the ground. (Tr. at 38-39.) To alleviate his pain, he took hot showers and prescription medication, Norco and Flexeril. (Tr. at 39.)

Claimant testified that if he did "a lot of walking around," he would experience pain in his knees. (Id.) He stated that on a typical day, he would sit a little while, then go outside and walk around. (Tr. at 40.) He indicated he lived in a basement apartment by himself and took his time to complete basic activities of daily living, such as cleaning, cooking, and laundry. (Id.) Claimant stated he could shop for groceries or clothing as long as he did not do it for very long, and would "end up against the grocery cart" for longer trips due to back pain. (Id.)

Claimant testified that Dr. Rao treated him for pain by prescribing him Norco and administering two injections in his lower back, one on each side. (Tr. at 41.)

Vocational Expert ("VE") Cecelia Thomas Testimony:

The VE described Claimant's past work as a sheet metal worker at the skilled, medium level and a construction laborer at the unskilled, very heavy level. (Tr. at 43-44.) The ALJ asked the VE whether a hypothetical individual with Claimant's vocational profile and RFC could perform any of his past work. (Tr. at 45-46.) The VE responded that the individual would be unable to perform Claimant's past work but could perform other jobs at the unskilled, light level in the national and regional economies, such as cashier (DOT No. 211.462-010), price marker (DOT No. 209.587-034), and counter clerk (DOT No. 295.367-026). (Tr. at 46-47.) The VE further testified that an individual who was off task about 20 percent would be unable to maintain employment. (Tr. at 48.) Claimant's representative asked the VE whether an individual with Claimant's vocational profile could perform the named jobs if he were restricted to the RFC assessment completed by Dr. Rao. (Id.) The VE testified she could not name any jobs because "[t]he exertional capacity combined would be less than a full eight-hour workday." (Tr. at 49.)

Claimant's Challenges to the Commissioner's Decision

Claimant contends that the ALJ failed to properly evaluate the opinion of Claimant's treating physician, Dr. Kalapala Rao. (Document No. 12 at 9-12.) Claimant contends that the ALJ gave little weight to Dr. Rao's opinion without sufficient explanation as required under 20 C.F.R. § 404.1527(c)(2) and SSR 96-2p because he failed to consider Dr. Rao's opinion that Claimant's limitations were also the product of his "poor endurance" from COPD. (Id. at 10.) Substantial evidence in the record supported Dr. Rao's findings that Claimant had difficulties with his respiratory systems, which should have afforded Dr. Rao's opinion controlling weight pursuant to Ward v. Chater, 924 F. Supp. 53, 55 (W. D. Va. 1996). (Id. at 11.) By failing to evaluate Dr. Rao's

opinion as required under the Regulations, and by finding that Dr. Rao's opinion conflicted with the evidence of record without an explanation, the ALJ provided an inadequate RFC assessment that warrants remand pursuant to Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015.). (Id. at 11-12.)

The Commissioner responds that the ALJ's decision is supported by substantial evidence because the ALJ correctly assigned little weight to Dr. Rao's opinion because it was inconsistent with the evidence, and therefore not entitled to controlling weight under the Regulations. (Document No. 13 at 6-9.) The Commissioner argues that contrary to Claimant's argument that the ALJ did not consider Dr. Rao's opinion of Claimant's disabling limitations with respect to his respiratory issues, the medical evidence did not support Dr. Rao's conclusions. (Id. at 7-8.) Further, the Commissioner argues that a mere diagnosis of COPD is insufficient as a disabling impairment, Claimant had to prove impairment from this condition, and the evidence did not support such an impairment. (Id. at 8-9.) Further, Claimant was advised to stop smoking in order to improve his respiratory condition, but he continued to smoke two packs a day. (Id. at 9.) Accordingly, the Commissioner argues that the ALJ properly discounted Dr. Rao's opinion, and ultimately, his finding Claimant was not disabled was based on substantial evidence. (Id.)

In reply, Claimant argues that the Commissioner's *post hoc* rationale for the ALJ's decision that the ALJ did not himself acknowledge in discrediting Dr. Rao's opinion does not cure the error below.[3] (Document No. 14 at 1-2.) Moreover, Claimant contends that even though the ALJ never

---

[3] See, SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 50 (1983), citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 151, 168 (1962); Luster v. Astrue, 2011 U.S. Dist. LEXIS 60596, 2011 WL 2182719 (D.S.C. 2011); Tanner v. Astrue, 2011 U.S. Dist. LEXIS 61737, 166 Soc. Sec. Rep. Service 454, 2011 WL 2313042 (D.S.C. 2011).

mentioned this, the Commissioner's reliance that Claimant's smoking habit provides further evidence supporting the ALJ's devaluation of Dr. Rao's opinion is misplaced because the Fourth Circuit has held that smoking could be an involuntary act and the Commissioner may only deny benefits if finding a physician has prescribed a claimant to stop smoking and if a claimant is able to voluntarily stop pursuant to Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984). (Id. at 2-3.)

Analysis

The issue presented in this case is whether the ALJ failed to abide by the Regulations when he gave little weight to the opinion of Claimant's treating physician, Dr. Kalapala Rao, and provided "good reasons" for same with supporting persuasive contrary evidence. Claimant also argues that the ALJ's assigning "little weight" to Dr. Rao's opinion, particularly with respect to limitations from COPD, resulted in an insufficient RFC assessment necessitating remand.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. Id. If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §

404.1527(c)(2)(i) and (ii)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(c)(2).

Because the main contention at issue in this case concerns the opinion provided by Dr. Rao, it is important to review the ALJ's examination and treatment of same under the auspices of the Regulations. As noted *supra*, Claimant argues that the ALJ discredited Dr. Rao's opinion with respect to his findings concerning Claimant's back pain caused by degenerative disc disease, but failed to acknowledge Dr. Rao's recommended limitations that also concerned Claimant's COPD, as causing him to have "poor endurance." The ALJ noted that updated medical records from Dr. Rao from April 16, 2013[4] through April 21, 2014 indicated Claimant had a normal gait, straight leg raises test was normal, range of motion flexion was normal and lateral flexion was normal, and range of motion extension was decreased. (Tr. at 18.) The ALJ further noted that Dr. Rao's records indicated that Claimant had no side effects from medications, and recommended ice and heat and home exercises, and then later recommended trigger point injection. (Id.) The ALJ examined the opinion evidence, including the medical source statement provided by Dr. Rao, but gave little weight to this opinion "as Dr. Rao's treatment notes and the overall evidence in the record do not support such limitations."[5] (Id.) The ALJ explained this further by citing the evidence detailing

---

[4] The undersigned notes that the April 16, 2013 record is an x-ray report from Marietta Memorial Hospital, noted *supra*, however, there is no indication from the document that the x-ray was ordered by Dr. Rao. (Tr. at 345-347.) The earliest treatment note from Dr. Rao in the transcript is from December 30, 2013. (Tr. at 341-344.)

[5] The ALJ gave "great weight" to the opinion provided by State agency consultant, Dr. Gomez, however, "based upon the more recent medical evidence (Exhibits 6F – 13F), as well as the claimant's testimony at the hearing", the ALJ found Claimant had more postural and exertional limitations than found by Dr. Gomez. (Tr. at 18.) Of interest here, of the Exhibits cited by the ALJ, besides the treatment notes from Dr. Rao, also included the medical records from

Dr. Rao's examination of Claimant's lumbar spine, which "revealed only mild findings". (Id.)

With regard to Claimant's COPD, the ALJ initially found that the condition did not meet the requirements under section 3.02.[6] (Tr. at 15.) Further, the ALJ did not find Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms entirely credible because the objective medical evidence of record indicated that his pulmonary function study was normal. (Tr. at 17.) The ALJ also took note of records from May 2013 that "establish that the claimant's chronic obstructive airways disease was documented as stable. (Tr. at 18.)

The undersigned notes that the records show that Dr. Rao exclusively treated Claimant for his back pain; Claimant testified that Dr. Rao is his pain management physician and prescribes him Norco and gives him two injections in his lower back. (Tr. at 40-41.) There is no evidence in the record, except for the February 2, 2014 medical source statement, that Dr. Rao assessed Claimant's COPD limitations or treated him for respiratory issues. From that perspective, the undersigned disagrees with Claimant that the ALJ's treatment of Dr. Rao's opinion, specifically, his medical source statement, was incongruous with the Regulations because Dr. Rao's records did not provide "a detailed, longitudinal picture" of Claimant's COPD impairment under 20 C.F.R. § 404.1527(c)(2). In addition, there is no indication in the record, or from the ALJ's review of the evidence, that Dr. Rao's medical source statement complied with the two conditions espoused by Ward v. Chater, cited *supra*, especially with regard to the limitations he noted from Claimant's COPD. In short, though Dr. Rao was Claimant's treating physician for his pain management, there is no evidence in the record that he was Claimant's treating physician with regard to his COPD.

---

Marietta Memorial Hospital dated February 22, 2014 documenting not only unremarkable x-ray findings of Claimant's lumbar spine, but also normal lung and respiratory function. (Tr. at 311, 328, 338, 330.)
[6] Pursuant to 404, Subpt. P, App. 1

Accordingly, the undersigned finds that the ALJ did provide "good reasons" for discounting Dr. Rao's opinion.

Further, though it is clear the ALJ found, with respect to Claimant's degenerative disc disease, that Dr. Rao's "treatment notes" as well as the "overall evidence in the record" were inconsistent with Dr. Rao's assessment of Claimant's physical limitations, the ALJ's reconciliation of that conflicting evidence is within his province[7], and further, appears rational[8] from a review of the medical record. Dr. Rao's medical source statement included limitations concerning not just Claimant's severe impairments from degenerative disc disease of the lumbar spine, but also COPD, which Claimant contends should have been considered when the ALJ made the RFC assessment. However, it is well known that the RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1546.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

It is also important to note that the Fourth Circuit recognized that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (Citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). The ALJ noted that none of Claimant's severe impairments met the Listings in the Regulations (Tr. at 15-16.) and that the objective medical

---

[7] Pursuant to Hays, 907 F.2d at 1456, *supra*.
[8] Pursuant to Oppenheim, 495 F.2d at 397, *supra*.

evidence of record, which the ALJ cited for each impairment, did not support Claimant's subjective complaints and alleged limitations. (Tr. at 18.) Remand would be inappropriate and unnecessary in this case, as the ALJ adequately explained his findings supporting his decision, allowing for meaningful judicial review. Accordingly, the undersigned finds that the Commissioner's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), and **AFFIRM** the final decision of the Commissioner.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106

S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 22, 2016.

_____
Omar J. Aboulhosn
United States Magistrate Judge